## SETTLEMENT AGREEMENT AND RELEASE

This **SETTLEMENT AGREEMENT AND RELEASE** (this "**Agreement**") is made effective as of January 8, 2025 (the "**Effective Date**"), by and among **JR MEDIA CO., LLC**, a Georgia limited liability company ("**JR Media**"); **B&J OUTDOOR, LLC**, a Georgia limited liability company ("**B&J**"), **VERDE OUTDOOR MEDIA, LLC**, an Arizona limited liability company ("**Buyer**"); and **VERDE OUTDOOR SE, LLC**, a Georgia limited liability company ("**Verde SE**"). JR Media, B&J, Buyer and Verde SE are sometimes hereinafter collectively referred to as the "**Parties**" and individually as a "**Party**".

### RECITALS

WHEREAS, JR Media and Buyer (among others) entered into that certain Membership Purchase Agreement dated as of November 1, 2021 (the "**Purchase Agreement**") (all capitalized terms not defined in this Agreement shall have the definitions established in the Purchase Agreement), pursuant to which JR Media sold to Buyer, and Buyer purchased from JR Media units of membership interest in Renfroe Outdoor, LLC, a Georgia limited liability company, and Renfroe Outdoor SC, LLC, a Georgia limited liability company (the "**Purchased Units**");

WHEREAS, on December 22, 2021, Renfroe Outdoor, LLC and Renfroe Outdoor SC, LLC merged, leaving Renfroe Outdoor, LLC as the surviving entity and on March 11, 2024, Renfroe Outdoor, LLC subsequently filed a Name Change Certificate with the Georgia Secretary of State, thereby changing its name to Verde Outdoor SE, LLC;

WHEREAS, the Purchase Price paid to JR Media at Closing was a function of the actual and expected billboard cash flows of various billboard Sites, each of which was identified as either an "Existing Site," a "Permitted Development Site" or an "Unpermitted Development Site";

WHEREAS, pursuant to Section 1.03(b)(i)(B) of the Purchase Agreement, the parties were directed to compare the Actual BCFs of each of the Permitted Development Sites and Unpermitted Development Sites during the first twelve (12) full calendar months of such Site's operation with the Estimated BCFs as of the Closing Date and adjust the Purchase Price accordingly;

WHEREAS, as of the date of this Agreement, each of the Permitted Development Sites and Unpermitted Development Sites have been fully operational for twelve (12) months, thus having reached their True-Up Date and having generated an Actual BCF with which to compare to the Estimated BCF;

WHEREAS, Section 1.03(b)(i)(D) of the Purchase Agreement contemplates a Net Adjustment event at which all adjustments to the Purchase Price for the Permitted Development Sites and Unpermitted Development Sites will be made concurrently (the "**Purchase Price Adjustment**");

WHEREAS, the result of the Net Adjustment is such that JR Media owes to Buyer an amount that exceeds the value of JR Media's unpaid Note and Unpermitted Cash Payment, as such terms are used within Section 1.03(a)(iv)(ii) of the Purchase Agreements;

WHEREAS, in lieu of Buyer's payment to JR Media of its Note and Unpermitted Cash Payments, JR Media and Buyer have agreed to credit such amounts against the amounts otherwise owed from JR Media to Buyer as a result of the Purchase Price Adjustment;

Initial

WHEREAS, JR Media owes Verde SE a sum relating to expenses and revenues of Verde SE as of the Closing Date that were unascertainable at Closing and have since been determined and prorated to straddle the Closing Date (the "**Closing Prorations**");

WHEREAS, Verde SE owes JR Media a sum relating to unused capital expenditure funds that were withheld from JR Media at Closing to be used for the construction of certain Permitted Development Sites and Unpermitted Development Sites, but that were not expended in the construction of such Sites (the "**CapEx Funds**");

WHEREAS, Verde SE owes B&J, an affiliate of JR Media, a sum arising under that certain letter agreement dated January 28, 2022 (the "**Consulting Agreement**") relating to consulting services provided by B&J through the Effective Date (the "**Consulting Fee**"); and

WHEREAS, each of Buyer, JR Media, B&J and Verde SE now desire to (i) pay and settle all amounts owed to one another; and (ii) forever release one another from any further obligation, with respect to the above described items upon the terms and conditions described herein (notably excluding Charleston 2 Dispute, as described in Section 5 below).

NOW, THEREFORE, in consideration of the mutual covenants and agreements hereinafter set forth, and for other good and valuable consideration, the mutual receipt and legal sufficiency of which are hereby acknowledged, and intending to be legally bound, Sellers, Buyer and Verde SE hereby agree as follows:

1. **Payments by Verde SE to JR Media**. Verde SE shall pay to JR Media the total sum of $219,954, such amount representing JR Media's allocable share of the CapEx Funds less JR Media's allocable share of the Closing Prorations. Verde SE shall also pay to B&J the total sum of $838,954, such amount representing the total amount of the Consulting Fee due to B&J under the Consulting Agreement through the Effective Date.

2. **Payments by JR Media to Buyer**. JR Media shall pay to Buyer the total sum of $1,208,908. Additionally, JR Media acknowledges the cancellation and release of that certain Demand Note dated November 1, 2021 in the principal amount of $675,581.69 and the $337,790.85 Unpermitted Cash Payment owed to JR Media as set-offs against the amount otherwise owed from JR Media to Buyer to yield the total sum stated above.

3. **Mutual Release of JR Media, B&J and Verde SE.**

a. Verde SE, on behalf of itself and its successors, assigns, agents, representatives, and any other person or entity acting on its behalf, hereby releases JR Media, B&J and their respective successors, assigns, agents, representatives, and any other person or entity acting on its behalf, from any and all claims, demands, liabilities, obligations, damages, actions, and causes of action, whether known or unknown, which exist or may exist under the Purchase Agreement or Consulting Agreement as of the Effective Date but, as pertaining to the Purchase Agreement, only with respect to: (a) the Purchase Price Adjustment described in this Agreement, excluding the Charleston 2 Dispute; (b) the Closing Prorations; and (c) the CapEx Funds. All other claims, demands, liabilities, obligations, damages, actions and causes of action, whether known or unknown, which exist or may exist under the Purchase Agreement or Consulting Agreement as of the Effective Date, are preserved and not released.



2

b.      JR Media and B&J, each on behalf of itself and its successors, assigns, agents, representatives, and any other person or entity acting on its behalf, hereby releases Verde SE and its successors, assigns, agents, representatives, and any other person or entity acting on its behalf, from any and all claims, demands, liabilities, obligations, damages, actions, and causes of action, whether known or unknown, which exist or may exist under the Purchase Agreement or Consulting Agreement as of the Effective Date but, as pertaining to the Purchase Agreement, only with respect to: (a) the Purchase Price Adjustment described in this Agreement, excluding the Charleston 2 Dispute; (b) the Closing Prorations; (c) the CapEx Funds; and (d) the Consulting Fee. All other claims, demands, liabilities, obligations, damages, actions and causes of action, whether known or unknown, which exist or may exist under the Purchase Agreement or Consulting Agreement as of the Effective Date, are preserved and not released.

**4.      Mutual Release of JR Media and Buyer**.

a.      Buyer, on behalf of itself and its successors, assigns, agents, representatives, and any other person or entity acting on its behalf, hereby releases JR Media and its successors, assigns, agents, representatives, and any other person or entity acting on its behalf, from any and all claims, demands, liabilities, obligations, damages, actions, and causes of action, whether known or unknown, which exist or may exist under the Purchase Agreement as of the Effective Date, but only with respect to: (a) the Purchase Price Adjustment described in this Agreement, excluding the Charleston 2 Dispute; (b) the Closing Prorations; and (c) the CapEx Funds. All other claims, demands, liabilities, obligations, damages, actions and causes of action, whether known or unknown, which exist or may exist under the Purchase Agreement as of the Effective Date, are preserved and not released.

b.      JR Media, on behalf of itself and its successors, assigns, agents, representatives, and any other person or entity acting on their behalf, hereby release Buyer and its successors, assigns, agents, representatives, and any other person or entity acting on its behalf, from any and all claims, demands, liabilities, obligations, damages, actions, and causes of action, whether known or unknown, which exist or may exist under the Purchase Agreement as of the Effective Date, but only with respect to: (a) the Purchase Price Adjustment described in this Agreement, excluding the Charleston 2 Dispute; (b) the Closing Prorations; and (c) the CapEx Funds. All other claims, demands, liabilities, obligations, damages, actions and causes of action, whether known or unknown, which exist or may exist under the Purchase Agreement as of the Effective Date, are preserved and not released.

**5.      Reservation of Rights as to Charleston 2**. Notwithstanding the foregoing releases described in Section 4 above, this Agreement shall not release, discharge, waive or otherwise affect Buyer's and JR Media's respective rights, claims, or defenses related to their ongoing dispute regarding the Unpermitted Development Site in North Charleston, South Carolina upon which two (2) billboards have been constructed as of the Effective Date (the "**Charleston 2 Dispute**"). The Charleston 2 Dispute is unresolved and is expressly excluded from the scope of this Agreement.

**6.      Representations and Warranties**. Each party hereby represents and warrants to each other party that:



3

a.    it has the full right, power, and authority to enter into this Agreement, to grant the release contained herein and to perform its obligations hereunder.

b.    the execution of this Agreement by the individual whose signature is set out at the end of this Agreement on behalf of such party, and the delivery of this Agreement by such arty, have been duly authorized by all necessary action on the part of such party.

c.    this Agreement has been executed and delivered by such party and (assuming due authorization, execution, and delivery by the other parties hereto) constitutes the legal, valid, and binding obligation of such party, enforceable against such party in accordance with its terms

d.    it (i) knows of no claims against the other party relating to or arising out of the Purchase Agreement that are not covered by the releases contained in Sections 3 and 4 (with the exception of any claims reserved by Section 5) and (ii) has neither assigned nor transferred any of the claims released herein to any person or entity and no person or entity has subrogated to or has any interest or rights in any claims.

7.    **Miscellaneous**.

a.    This Agreement and all matters arising out of or relating to this Agreement are governed by, and construed in accordance with, the laws of the State of Georgia, without regard to the conflict of laws provisions of such State.

b.    This Agreement, and each of the terms and provisions hereof, may only be amended, modified, waived, or supplemented by an agreement in writing signed by each party.

c.    No Party may assign, transfer, or delegate any or all of its rights or obligations under this Agreement without the prior written consent of the other party. No assignment will relieve the assigning party of any of its obligations hereunder. Any attempted assignment, transfer, or other conveyance in violation of the foregoing will be null and void. This Agreement will inure to the benefit of and be binding on each of the Parties and each of their respective permitted successors and permitted assigns.

d.    For purposes of this Agreement, (i) the words "include," "includes" and "including" are deemed to be followed by the words "without limitation"; (ii) the word "or" is not exclusive; (iii) the words "herein," "hereof," "hereby," "hereto," and "hereunder" refer to this Agreement as a whole; (iv) words denoting the singular have a comparable meaning when used in the plural, and vice-versa; and (v) words denoting any gender include all genders. The parties drafted this Agreement without regard to any presumption or rule requiring construction or interpretation against the party drafting an instrument or causing any instrument to be drafted.

e.    The headings in this Agreement are for reference only and do not affect the interpretation of this Agreement.

f.    If any term or provision of this Agreement is invalid, illegal, or unenforceable in any jurisdiction, such invalidity, illegality, or unenforceability shall not affect any other term



4

or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction.

g.      Each of the parties shall, from time to time at the request of another party, furnish the other parties such further information or assurances, execute and deliver such additional documents, instruments, and conveyances, and take such other actions and do such other things, as may be reasonably necessary to carry out the provisions of this Agreement and give effect to the transactions contemplated hereby.

h.      This Agreement is the sole and entire agreement of the parties regarding the subject matter contained herein, and supersedes all prior and contemporaneous understandings, agreements, representations, and warranties, both written and oral, regarding such subject matter.

i.      This Agreement may be executed in two or more fully or partially executed counterparts, each of which will be deemed an original binding the signer thereof against the other signing parties, but all counterparts together will constitute one and the same instrument.

[Remainder of Page Left Intentionally Blank]



IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

**BUYER:**

**VERDE OUTDOOR MEDIA, LLC**
an Arizona limited liability company

By: _____
Name: Steven P. Johnson
Title: Manager

**VERDE SE:**

**VERDE OUTDOOR SE, LLC**
a Georgia limited liability company

By:      Verde Outdoor Media, LLC, Manager

By: _____
Name: Steven P. Johnson
Title: Manager

**JR MEDIA:**

**JR MEDIA CO., LLC**
a Georgia limited liability company

By: _____
Name: Marcus Benjamin Jones
Title: Manager

**B&J:**

**B&J OUTDOOR, LLC**
a Georgia limited liability company

By: _____
Name: Marcus Benjamin Jones
Title: Manager

[Signature Page – Settlement and Release Agreement]